UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CHRISTIAN BARRETTE and KATRENA BARRETTE,<br><br>Plaintiffs,<br><br>v.<br><br>JUBILEE FISHERIES, INC.,<br><br>Defendant. | CASE NO. C10-01206 MJP<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS LOSS OF CONSORTIUM CLAIM |

This matter comes before the Court on Defendant's motion to dismiss for failure to state a claim. Having reviewed the motion (Dkt. No. 19), the response (Dkt. No. 20), the reply (Dkt. No. 22), and all related papers, the Court DENIES the motion to dismiss.

**Background**

Plaintiff Christian Barrette was employed by Jubilee Fisheries, Inc., as a longline deckhand on the fishing vessel Zenith. (Dkt. No. 16 at 1.)

From April 2008 into the early season of 2009, the F/V Zenith experienced numerous Freon leaks due to blown and damaged hoses. (Dkt. No. 16 at 2.) One such incident resulted in

the death of the ship's engineer. (Id.) Despite higher than normal readings of Freon levels, the Captain ordered the crew to continue working for several days before returning to port. (Id.)

As a result, Mr. Barrette began to exhibit symptoms of prolonged exposure to unsafe levels of Freon. (Id.) Mr. Barrette went to a medical clinic, where an x-ray revealed pneumonitis and physical tests indicated reduced breathing performance. (Id.) Once home in Yakima, Washington, Mr. Barrette visited a respiratory specialist, whose assessment determined that Mr. Barrette had suffered permanent damage to his lungs in the form of chronic dyspnea. (Id.)

Mr. Barrette seeks damages under the Jones Act and general maritime law for the personal injuries sustained during his employment by Jubilee. (Id.) His wife, Katrena Barrette, has also asserted a claim for loss of consortium. (Id.) Jubilee has filed a motion to dismiss Mrs. Barrette's claim under Rule 12(b)(6), and argues that loss of consortium is not a cognizable claim for suits brought under the Jones Act or the general maritime law. (Dkt. No. 19 at 1.)

**Analysis**

I. **Standards of Law**

This matter comes before the Court on Jubilee's motion to dismiss for failure to state a claim upon which relief can be granted. A motion to dismiss under Federal Rule 12(b)(6) tests the legal sufficiency of a claim. See Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001). A claim should be dismissed only if it is beyond doubt that "the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45 (1957). All material allegations of the complaint are accepted as true, and all reasonable inferences are drawn in the light most favorable to the non-moving party. See Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 338 (9th Cir. 1996).

1 | Dismissal in this case is proper if the Court determines there is no cognizable legal theory
2 | on which relief can be granted. See Balisteri v. Pacifica Police Dept., 901 F.2d 696, 699 (9th
3 | Cir. 1998).

**II.	Discussion**

Mrs. Barrette's claim for loss of consortium is derivative of the tortious injury suffered by Mr. Barrette. (Dkt. No. 16 at 8; Dkt. No. 19 at 2.) As such, it can only attach to his unseaworthiness claim or his Jones Act claim.

Jubilee points out, and Plaintiffs concede, that the Jones Act prohibits recovery for loss of consortium. See Nygaard v. Peter Pan Seafoods, 701 F.2d 77, 79 (9th Cir. 1983). Thus, Mrs. Barrette's claim may only attach to the unseaworthiness claim. Jubilee argues, however, that recovery for loss of consortium is also unavailable under general maritime law. (Dkt. 22. at 2.) Jubilee cites two cases for this argument: Miles v. Apex Marine Corp., 111 S.Ct. 317 (1990); and Smith v. Trinidad Corp., 992 F.2d 996 (1993) (per curiam).

However, the Barrettes assert that recovery for loss of consortium remains available under general maritime law. (Dkt. No. 20 at 1.) The Barrettes argue that a recent Supreme Court case, Atlantic Sounding Co., Inc. v. Townsend, 129 S.Ct. 2561 (2009), drastically limited the scope of Miles, leaving this Court free to award remedies in general maritime claims beyond the remedies available under the Jones Act. (Id.)

Having reviewed the documents and applicable law, the Court finds that the limitation on damages in the Jones Act does not preclude recovery for loss of consortium in an unseaworthiness claim. Accordingly, the Court DENIES defendant's motion to dismiss Mrs. Barrette's loss of consortium claim, and allows Mrs. Barrette's claim to proceed to trial.

### a. **Historical Background**

Unseaworthiness is a claim under general maritime law based on the vessel owner's duty to ensure that the vessel is reasonably fit to be at sea. See Lewis v. Lewis & Clark Marine, Inc., 531 U.S. 438, 441 (2001); Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 550 (1960).

Unseaworthiness has been recognized by general maritime law since before enactment of the Jones Act. See Mahnich v. Southern S.S. Co., 321 U.S. 96, 99 (1944). In The Osceola, the Supreme Court definitively stated the causes of action that were recognized by general maritime law at that time. 189 U.S. 158, 175 (1903). Writing for the Court, Justice Brown set forth several distinct rules, the first two being that: (1) owners of a ship have a duty to provide maintenance and cure for a sailor who is injured or becomes ill during service to the ship, and (2) owners of a ship have a duty to provide a seaworthy vessel, and are liable for all damages arising out of a breach of this duty. Id. Although the sailors could bring suit for maintenance and cure or injuries arising from the unseaworthiness of the vessel, the Court found that the vessel or the vessel owners were not liable for indemnity for injuries resulting from negligent conduct of fellow crew members. Id.

In response, Congress enacted the Jones Act in 1920. 46 U.S.C. § 30104. The Jones Act sought to displace the holding of The Osceola that shielded employers from liability for injuries caused by negligence of the crew. See Atlantic Sounding Co., Inc., v. Townsend, 129 S.Ct. 2561, 2570 (2009). The Jones Act also provided a statutory cause of action for wrongful death suits, something not previously recognized under general maritime law. Id., at 2572. It did not displace the other parts of The Osceola, such as the ability of a seaman to recover on maintenance and cure or unseaworthiness claims. Id. at 2570

1    Although no explicit limitation on damages was written into the Jones Act, it does adopt
2    the substantive recovery provisions of the Federal Employer Liability Act ("FELA"). See Miles
3    v. Apex Marine Corporation, 498 U.S. 19, 32 (1990); 46 U.S.C. § 30104. And while FELA itself
4    also does not explicitly limit damages in any form, see 45 U.S.C. App. § 51, a limitation of
5    damages recoverable under FELA was established by the Supreme Court in Michigan Central R.
6    Co. v. Vreeland, 227 U.S. 59 (1913). The Court ruled that only pecuniary recovery was
7    permitted in suits brought under FELA. Id.

8    It was not until Miles that the Supreme Court extended the limitation on damages in the
9    Jones Act to a general maritime cause of action. In Miles, a mother sought loss of consortium
10   damages on a general maritime claim for the wrongful death of her son, a Jones Act seaman.
11   Miles, 498 U.S. at 22. The Court limited the recovery available in a wrongful death action to
12   pecuniary losses, regardless of whether the action was brought under the Jones Act or general
13   maritime law. See id. at 33.

14   In reaching this conclusion, the Court first addressed the question of whether the
15   representative of a deceased seaman may recover for loss of society under the Jones Act. The
16   Court stated that the Jones Act permitted recovery only for pecuniary losses Id. at 32.

17   The Court in Miles then found that the limitations on recovery in the Jones Act also
18   precluded recovery for loss of society in wrongful death actions brought under general maritime
19   law. See id. at 33. The Court concluded that "it would be inconsistent with our place in the
20   constitutional scheme were we to sanction more expansive remedies in a judicially created cause
21   of action in which liability is without fault than Congress has allowed in cases of death resulting
22   from negligence." See id. at 32-33.

1   The Ninth Circuit extended the reasoning of Miles to preclude loss of society claims for
2   every maritime tort that occurs on the high seas.  See Smith v. Trinidad Corp., 992 F.2d 996 (9th
3   Cir. 1993) (per curiam); accord Murray v. Anthony J. Bertucci Const. Co., Inc., 958 F.2d 127
4   (5th Cir. 1992), cert denied, 506 U.S. 865 (1992); see also Chan v. Society Expeditions, Inc., 39
5   F.3d 1398, 1407 (9th Cir. 1994).  Although it appeared that Miles and Smith had sounded the
6   death knell for non-pecuniary damages in general maritime cases, the Supreme Court clarified
7   the scope of Miles in Atlantic Sounding Co., Inc., v. Townsend, 129 S.Ct. 2561.

8   In Townsend, a seaman sought to recover punitive damages in a general maritime suit,
9   arguing that his employer willfully failed to pay maintenance and cure.  See id. at 2564.  The
10  Court addressed the issue of whether the reasoning in Miles meant that seamen could recover
11  only those damages available under the Jones Act, and found that such a reading of Miles would
12  be "far too broad." Id. at 2571-2572.

13  In so holding, the Court reasoned that the Jones Act applied only to causes of action
14  involving negligence, and "did not eliminate pre-existing remedies available to seamen." Id.
15  The Court reasoned that by the very language of the Jones Act, a seaman may "elect" to bring a
16  suit under the Act, thereby implying a choice of causes of action.  See id.  "Because the then-
17  accepted remedies for injured seamen arose from the general maritime law, it necessarily follows
18  that Congress was envisioning the continued availability of those common-law causes of action."
19  Id. (internal citations omitted).  The Jones Act "was remedial, for the benefit and protection of
20  seamen who are peculiarly the wards of admiralty.  Its purpose was to enlarge that protection, not
21  to narrow it." Id. at 2570 (quoting The Arizona v. Anelich, 398 U.S. 110, 123 (1936)).

22  The Court stated that a claim to maintenance and cure remained a separate cause of
23  action from Jones Act negligence, and was not displaced nor limited by the provisions of the Act.
24

1  Id. at 2573.  Although a violation of the duty to provide maintenance and cure could also give

2  rise to a Jones Act claim, a seaman remained entitled to choose between bringing suit under the

3  Jones Act or general maritime law.  Id. at 2574.  In determining the damages available in a

4  general maritime maintenance and cure action, the Court concluded that punitive damages were

5  an established remedy in the common law at the time that the Act was legislated (see id. at

6  2565), and that "nothing in maritime law undermines the applicability of this general rule in the

7  maintenance and cure context."  Id. at 2568.  Because allowing punitive damages did not require

8  the creation of a new cause of action or remedy, the Court determined that such recovery was

9  possible without abridging or violating the Jones Act.  Id. at 2573.

### III. Application

11  The Barrettes argue that, in light of Townsend, a seaman's recovery under the general

12  maritime law is not limited to those damages available under the Jones Act.  (Dkt. No. 20 at 1.)

13  They argue that Townsend affirms the availability of loss of consortium in general maritime

14  actions.  (Id.)

15  Jubilee concedes that Miles has been limited by Townsend, but argues that Smith

16  specifically addresses loss of consortium in general maritime actions.  As Smith has not been

17  overruled and is not directly inconsistent with the holding of Townsend, Jubilee argues that this

18  Court remains bound by the rule announced in Smith.  Jubilee contends that there is no evidence

19  that recovery for loss of consortium existed in general maritime actions prior to the Jones Act.

20  (Dkt. No. 22 at 3.)  For this reason, they state that an award of damages to Mrs. Barrette would

21  be an attempt by the court to "expand" or "alter" existing statutory remedies.  (Id. at 4.)

22  The Court finds that Townsend limited the application of Miles, and has, as even Jubilee

23  concedes, reined in the "broad reading of Miles previously espoused by the lower federal

courts." (Dkt. No. 22 at 2.) The Court agrees with the Barrettes that the both the cause of action (unseaworthiness) and the remedy (loss of consortium) existed in general maritime law prior to the enactment of the Jones Act. Thus, the Jones Act does not preclude recovery for loss of consortium in an unseaworthiness action. To the extent that Smith is irreconcilable with the reasoning of Townsend, the Court declines to apply Smith to bar Mrs. Barrette's claim and considers itself bound by the reasoning of Townsend.

    A. <u>In Light of Townsend's Interpretation of Miles, the Court Determines that the Reasoning of Smith Has Been Effectively Undermined.</u>

Despite Jubilee's contention that this Court is bound to follow Miles by principles of *stare decisis*, Miles is not applicable to the facts of this case. Miles only addressed the remedies available in a general maritime wrongful death action created by the Supreme Court, and did not address the claim of unseaworthiness nor the remedies available. See Miles, 498 U.S. at 33.

Nor does application of the Miles rationale lead to the outcome suggested by Jubilee. The general maritime claim of unseaworthiness existed long before the Jones Act. See Mahnich, 321 U.S. at 99-100. By the explicit language of Miles, "[t]he Jones Act. . . does not disturb seamen's general maritime claims for injuries resulting from unseaworthiness." Miles, 498 U.S. at 29. Unseaworthiness remains a separate cause of action from negligence under the Jones Act, and a seaman can bring suits and recover on both an unseaworthiness claim and a Jones Act negligence claim.

Miles sought to limit recovery where general maritime law and the Jones Act necessarily overlapped. See Miles, 498 U.S. at 33. Because the Jones Act does not necessarily cover an unseaworthiness claim, the uniformity principle espoused in Miles does not direct the Court to deny recovery for loss of consortium. "The laudable quest for uniformity in admiralty does not

require the narrowing of available damages to the lowest common denominator approved by Congress for distinct causes of action." Townsend, 129 S.Ct. at 2575. Thus, neither the holding nor the reasoning of Miles is directly applicable to this case.

However, Jubilee is correct that Smith is on point. Citing Miles, Smith stated that the spouse of an injured Jones Act seaman could not recover for loss of consortium from a ship, regardless of whether the claim was asserted under the Jones Act or general maritime law. Smith, 992 F.2d 996. Jubilee argues that because Smith was premised on Miles, and Townsend affirmed the logic of Miles, Smith remains good law. (Dkt. No. 22 at 2.)

Traditionally, this Court would be bound by Smith until it is overruled en banc, or explicitly overruled by a Supreme Court decision. Recently, however, the Ninth Circuit has identified situations in which the lower courts are not bound to follow prior circuit opinions. "Where the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, a lower court should consider itself bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled." Miller v. Gammie, 335 F.3d 889, 893 (9th Cir. 2003). Miller instructed district courts and three judge panels on how to approach "an inconsistent decision 'on a closely related, but not identical issue.'" Fireman's Fund Ins. Co. v. Oregon Auto. Ins. Co., 2010 WL 3467297 (D. Or. 2010) (quoting Miller, 335 F.3d at 899).

In light of the changes in the law after Townsend, this Court disagrees that Smith compels this court to dismiss Mrs. Barrette's claim. Although Townsend is factually distinguishable from both Smith and the instant case, this Court is not allowed to disregard the Supreme Court's reasoning in Townsend. Principles of *stare decisis* compel this Court to apply not only the holding of a case, but also the "mode of analysis" used. See Miller v. Gammie, 335

F.3d at 900 (quoting Antonin Scalia, The Rule of Law as a Law of Rules, 56 U. Chi. L. Rev. 1175, 1177 (1989)).

Smith determined that the spouses of Jones Act seamen were limited to damages available under the Jones Act, even if brought under the general maritime law. See Smith, 992 F.2d at 996. The Court in Townsend dismissed an argument logically identical to the holding in Smith. "In Miles, petitioners argue, the Court limited recovery in maritime cases involving death or personal injury to the remedies available under the Jones Act. . .Petitioners' reading of Miles is far too broad." Townsend, 129 S. Ct. at 2571-2572. Nothing in the language of the Jones Act prevents an injured seaman from asserting an unseaworthiness claim under general maritime law nor limits the recovery available, and this Court will "not attribute words to Congress that it has not written." Id. at 2575.

Limiting recovery in unseaworthiness actions to "whatever is permitted by the Jones Act would give greater pre-emptive effect to the Act than is required by its text, Miles, or any of this Court's other decisions interpreting the statute." Townsend, 129 S.Ct at 2574. To the extent that Smith holds otherwise, the Court finds that the reasoning in Smith is irreconcilable with Townsend, and declines to apply Smith.

### B. Application of the Analytical Framework of Townsend Establishes that Loss of Consortium Claims Were Cognizable Prior to the Enactment of the Jones Act

Because the Court determines that Miles and Smith are not dispositive in this case, and that Townsend is binding on the reasoning of this Court, application of the analytical framework of Townsend is necessary to determine if recovery for loss of consortium remains available in a general maritime action. Engaging in the same analysis, the Court finds that loss of consortium damages have long been available at common law, and that the common-law tradition allowing

recovery for loss of consortium extends to general maritime claims. As such, the Court finds that recovery for loss of consortium remains available to Mrs. Barrette, in conjunction with her husband's unseaworthiness claim.

The Court in <u>Townsend</u> arrived at its conclusion to allow punitive damages in a maintenance and cure claim by addressing three legal principles. "First, punitive damages have long been available at common law. Second, the common-law tradition of punitive damages extends to maritime claims. And third, there is no evidence that claims for maintenance and cure were excluded from this general admiralty rule." <u>Townsend</u>, 129 S.Ct. at 2569.

It is uncontested that loss of consortium has long been a cognizable injury at common law. "In fact, since the 17th century, juries have assessed damages for loss of consortium- which encompasses loss of society- in civil actions brought by husbands whose wives have been negligently injured." <u>Sea-Land Services v. Gaudet</u>, 414 U.S. 573, 585 (1974) (abrogated by <u>Miles</u>, 498 U.S. 19).

The common law's recognition of a loss of consortium claim extended to suits brought under general maritime law. The ability to recover for loss of consortium has been discussed in cases dating back to 1860. <u>See</u> <u>Cutting v. Seabury</u>, 6 F.Cas. 1083, 1084 (D. Ct. Mass. 1860) (loss of consortium denied on other grounds). Loss of consortium claims became maritime in nature by their inherent connection to the spouse's maritime tort claim. <u>See</u> <u>New York & Long Branch Steamboat Co. v. Johnson</u>, 195 F. 740, 741-742 (3d Cir. 1912) (allowing husband to recover loss of consortium for negligent injury to his wife, stating that "[w]e are clear that Johnson's claim [for loss of consortium] was recoverable in admiralty").

1    There are several cases involving true seamen in which damages for loss of consortium
2 were awarded. In a case cited by the Barrettes, the families of three sailors killed in a collision
3 recovered for the loss of "services, society, comfort and support" of their relatives. Carlsdotter
4 v. The E.B. Ward Jr., 23 F. 900, 901 (E. Dist. La. 1885). One case in particular appeared to be
5 premised on a breach of the duty to provide a seaworthy ship. The widow was allowed to
6 recover for loss of consortium where her husband was killed as a result of a defective chain
7 supplied by the ship. See The Schooner Robert Lewers Co. v. Kekauoha, 114 F. 849, 854 (9th
8 Cir. 1902).
9    These cases establish that recovery for loss of consortium was available in general
10 maritime claims, and specifically available in cases involving the death or injury of true seamen.
11 Furthermore, there is no evidence that claims premised on unseaworthiness were exempted from
12 the common-law rule extending loss of consortium to maritime suits. The presence of these
13 cases supports- rather than refutes- the availability of loss of consortium in general maritime law,
14 pre-dating the Jones Act. See Townsend, 129 S.Ct. at 2569, N.4. Allowing Mrs. Barrette's loss
15 of consortium claim would not involve the creation of a new common-law remedy, and thus does
16 not violate the Jones Act.

**Conclusion**

18    Because unseaworthiness was a well-established cause of action prior to the enactment of
19 the Jones Act, nothing in the Jones Act displaces such a claim nor limits the remedies available
20 therein. As such, the Court finds that the Jones Act does not preclude recovery for Mrs.
21 Barrette's loss of consortium claim. Applying the Townsend analytical framework, it is clear
22 that loss of consortium damages were available in the general maritime law before the enactment
23 of the Jones Act. Jubilee has presented no evidence to establish that such damages were

excluded from unseaworthiness claims. As a result, the Court DENIES Jubilee's motion to dismiss, and allows Mrs. Barrette's claim to proceed to trial, with instructions to the jury that her loss of consortium claim is compensable only in relation to Mr. Barrette's unseaworthiness claim.

The clerk is ordered to provide copies of this order to all counsel.

Dated this _11th_ day of August, 2011.

_____
Marsha J. Pechman
United States District Judge